UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| IN RE:<br>RHONA P. JULIEN,<br>　　　　　DEBTOR. | Chapter 13<br>Case No. 10-22026-WCH |
| RHONA P. JULIEN,<br>　　　　　PLAINTIFF,<br>v.<br>BANK OF AMERICA, N.A., AS<br>SUCCESSOR BY MERGER TO BAC<br>HOME LOANS SERVICING, LP<br>　　　　　DEFENDANT. | Adversary Proceeding<br>Case No. 11-1103 |

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matter before the Court is the "Defendant's Motion to Dismiss the Plaintiff's Complaint" (the "Motion to Dismiss") filed by Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP (the "Defendant"), and "The Plaintiff, Rhona P. Julien's, Opposition to the Defendant, BAC Home Loan [sic] Servicing, LP's, Motion to Dismiss" (the "Opposition") filed by Rhona P. Julien (the "Debtor"). The Defendant asserts that the Complaint fails to state a claim under the Real Estate Settlement Procedures Act ("RESPA")[1] because (1) the Debtor's correspondence to the Defendant does not constitute a qualified written request ("QWR") as that term is used in the statute; (2) the Defendant responded to the Debtor's

---

[1] 12 U.S.C. § 2601 *et seq.*, *amended by* Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, § 1463(c).

1

correspondence; and (3) the Debtor did not adequately plead damages in her adversary complaint.  For the reasons set forth below, I will grant the Motion to Dismiss.

## II. BACKGROUND

For the purposes of this motion to dismiss, I must accept as true all allegations contained within the Debtor's "Complaint for Damages Arising From Violation of the Real Estate Settlement Procedures Act (RESPA)" (the "Complaint").[2]  The Debtor is the owner of certain real property located at 64 Beaumont Street in Boston, Massachusetts.  On June 26, 2007, the Debtor granted a mortgage to Mortgage Electronic Registration Systems, which was subsequently assigned to the Defendant.  The mortgage secured a promissory note in the amount of $338,500.00, payable in monthly installments at a variable interest rate (6.125% per annum at the time the Debtor filed the Complaint).

The Debtor filed a Chapter 13 petition on November 2, 2010, and subsequently filed her schedules on December 18, 2010.  On "Schedule D – Creditors Holding Secured Claims," the Debtor listed the Defendant as holding a claim in the amount of $322,250.00.[3]  On December 29, 2010, the Defendant filed a proof of claim, alleging it held a secured claim in the amount of $377,303.23, as well as $63,119.73 in pre-petition arrears and various additional fees, charges, and expenses allegedly owed by the Debtor.

On January 21, 2011, the Debtor sent a letter to the Defendant (the "Letter") requesting written information regarding her mortgage, including, *inter alia*, monthly principal, interest, and escrow payments, both pre- and post-petition; the total unpaid principal, interest, and escrow balances as of the petition date; how pre-petition payments were applied to the Debtor's account;

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] On Schedule D, the Debtor specified that $331,571.00 as the amount of the claim without deducting the value of collateral, of which $9,321 was unsecured.  Case No. 10-22026, Docket No. 24.

2

all pre- and post-petition expenses, charges, fees, and other costs; the payment dates, purposes, and recipients of all escrow account items pre-petition; the current escrow account payment, how it was calculated, and the reasons for any increase or decrease pre-petition; the balance of the escrow account as of the petition date; the balance of any suspense account as of the petition date and the reasons why funds were deposited in such an account; and the current interest rate on the Debtor's mortgage account.[4] The Debtor included her name, address, bankruptcy case number, and account number in the Letter, and in the first sentence, she stated that the Letter "shall serve as a 'qualified written request' under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)."[5]

On February 10, 2011, the Defendant sent a letter to the Debtor acknowledging its receipt of the Letter on January 28, 2011 (the "Acknowledgement").[6] The Acknowledgement stated that "[t]he concerns addressed in [the Debtor's] correspondence require[d] further detailed analysis," and that the Defendant would respond to the Letter after completing an investigation.[7] The Acknowledgement also provided the name and telephone number of an individual the Debtor could contact should she have any questions in the interim.

On April 30, 2011, the Debtor filed the Complaint, alleging that the Defendant had failed to provide her with a written explanation regarding the information she requested in the Letter or why the information was otherwise unavailable. The Debtor alleges that the Defendant's failure to respond violated 12 U.S.C. § 2605(e), that such a failure constituted a pattern or practice of noncompliance with its obligations under 12 U.S.C. § 2605(e), and that she suffered damages as

---

[4] *See* Complaint, Exhibit A.

[5] *Id.*

[6] *See id.*, Exhibit B.

[7] *Id.*

3

a result. The Debtor alleges that she suffers from "anxiety, fatigue, loss of sleep, stress, mental anguish, and emotional distress"[8] as a direct and proximate result of the Defendant's inaction, and as such, she is entitled to actual monetary damages, costs, and reasonable attorney's fees under 12 U.S.C. § 2605(f).[9] On April 27, 2011, the Defendant responded to the Debtor, stating that the Letter was "missing information that [was] essential to qualified written requests under 12 U.S.C. § 2605" (the "Response").[10]

On March 5, 2012, the Defendant filed the Motion to Dismiss accompanied by the "Defendant's Memorandum of Law In Support of Its Motion to Dismiss Plaintiff's Complaint" (the "Memorandum"). After the parties continued the hearing date several times, the Debtor filed the Opposition on January 15, 2013. Two days later, on January 17, 2013, I conducted a hearing on the Motion to Dismiss. At the conclusion of the hearing, I took the matter under advisement.

## III. POSITIONS OF THE PARTIES

### A. The Defendant

The Defendant argues that the Complaint fails to state a claim under RESPA because (1) the Letter does not constitute a QWR; (2) the Defendant timely mailed the Response; and (3) the Debtor did not adequately plead damages. The Defendant first argues that the Letter is not a QWR because it fails to explain why the Debtor believes her account is in error. The Defendant explains that a QWR permits borrowers to inquire as to information regarding the "servicing" of the loan,[11] and "if a letter purporting to be a QWR disputes an aspect of the loan's accounting,

---

[8] *Id.* ¶ 18.

[9] *Id.* ¶ 19.

[10] Defendant's Memorandum, Exhibit 1.

[11] *Id.* at 5 (*citing* 12 U.S.C. § 2605(e)(1)(A)).

4

the letter must also state why the borrower believes the account to be in error."[12] The Defendant also highlights the Debtor's objection to unapproved fees and costs "to the extent they exist," urging that disputing potentially nonexistent charges cannot possibly amount to the level of specificity required under RESPA.[13] Thus, the Defendant concludes, the Letter cannot constitute a QWR because it lacks particularity with respect to the disputed charges. To the extent that the Debtor contests charges unapproved by the court, the Defendant argues that a QWR only applies to servicing as required by the terms of the loan.

Second, the Defendant argues that even if the Letter could be construed as a QWR, the Defendant timely responded on April 27, 2011, fulfilling its obligations under 12 U.S.C. §2605(e)(2). Seemingly in contrast, the Defendant also admits that the Response was mailed 3 days after the 60-day period elapsed, but argues that the Debtor failed to plead that her damages were caused by the 3-day delay. Regardless of the actual timing of the Response, the Defendant asserts that the Debtor's claim for damages was premature because at the time the Debtor filed the Complaint, the Defendant still had time to respond to the Letter before the 60-day period expired. The Defendant counts that at the time the Debtor filed the Complaint, only 44 days had elapsed since Defendant received the Letter.

Third and finally, the Defendant contends that the Debtor did not adequately plead damages. The Defendant argues that "the Complaint does not allege any facts demonstrating causal link between [the Defendant's] alleged failure to respond to the Letter and the damages she alleges she suffered," and that conclusory assertions are not sufficient to state a claim.[14] The

---

[12] *Id.*

[13] *Id.* at 6.

[14] *Id.* at 9-10.

5

Defendant refutes the Debtor's allegation that the Defendant's conduct constituted a pattern of noncompliance under 12 U.S.C. § 2605(e), asserting that it is unsupported by fact and that the Debtor did not specifically demand statutory damages under 12 U.S.C. §2605(f)(1)(B). Therefore, argues the Defendant, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

B.  The Debtor

The Debtor argues that the Letter meets the requirements of a QWR under RESPA because it is a detailed request for information regarding her mortgage loan.  She explains that the language of 12 U.S.C. § 2605(e)(B)(ii) requires that a QWR provide a statement of the reasons the borrower believes her account is in error *or* sufficient detail regarding other information the borrower seeks.  The Debtor highlights that courts have routinely found that requests for information constitute QWRs, regardless of whether the borrower states any reasons for why she believes account is erroneous.  Additionally, the Debtor asserts that the Defendant failed to timely respond to the Letter.  The Debtor argues that the Dodd-Frank Wall Street Reform Act shortened the 60-day response period to 30 days, and thus the Response dated April 27, 2011 was sent well beyond the deadline.

Finally, the Debtor maintains that she adequately pleaded damages.  The Debtor contends that under RESPA, she is entitled to actual damages caused by Defendant's failure to timely respond to QWR, and that the term "actual damages" is interpreted broadly to encompass mental anguish or emotional distress.  The Debtor urges that RESPA does not require that a borrower demonstrate in a civil complaint how a violation of the statute caused her damages.  Therefore, the Debtor argues that she "should not be required to specifically and extensively plead facts in her Complaint showing a casual [sic] connection between the Defendant's violation of [12

6

U.S.C.] § 2605(e) and the resulting mental anguish and emotion distress she suffered and sustained as a result thereof."[15] The Debtor maintains that she complied with the pleading standard under Fed. R. Civ. P. 8, and posits that causation is an issue better addressed in a motion for summary judgment, at which point the Debtor "may introduce evidence substantiating her claim."[16] Finally, the Debtor argues that even she is required to allege specific facts in complaint showing causation, she should be given opportunity to amend the Complaint in lieu of dismissal.

## IV. DISCUSSION

### A. Standard of Dismissal Under Fed. R. Civ. P. 12(b)(6)

In *Ashcroft v. Iqbal*, the Supreme Court of the United States set forth the current standard for dismissal under Fed. R. Civ. P. 12(b)(6), made applicable in adversary proceedings by Fed. R. Bankr. P. 7012(b):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[17]

The Supreme Court emphasized that:

> [a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.[18]

---

[15] Opposition at 6.

[16] *Id.*

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556-570) (internal citations omitted); *see also DiVittorio v. HSBC Bank, USA, N.A. (In re DiVittorio)*, 430 B.R. 26, 42 (Bankr. D. Mass. 2010), *subsequently aff'd*, 670 F.3d 273 (1st Cir. 2012).

[18] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 55) (internal quotations omitted).

7

Along these same lines, "the First Circuit has explained that I need not 'swallow the plaintiff's invective hook, line, and sinker; [and that] bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"[19]

Additionally, it is well established that the courts may consider exhibits attached to the complaint when ruling on a motion to dismiss. Recently, Chief Judge Wolf of the United States District Court for the District of Massachusetts summarized that:

> [o]rdinarily, a court will not consider documents outside of the pleadings in a motion to dismiss. *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). From this rule, the First Circuit makes a "narrow exception for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* at 3-4; *see Beddall v. State St. Bank & Trust, Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998) (When "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").[20]

Here, the Debtor has attached as exhibits to the Complaint copies of dated, written correspondence between the parties and postal delivery receipts. The parties do not dispute the authenticity of these documents, and they are central to the Debtor's claim under RESPA because at issue is the content of the Letter and the timing of the Response. Therefore, I shall treat the exhibits attached to the Complaint as if they have merged into the Complaint.

---

[19] *In re DiVittorio*, 430 B.R. at 42-43 (*quoting Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)).

[20] *Facey v. Dickhaut*, CA 11-10680-MLW, 2012 WL 4361431, at *3 & n.2 (D. Mass. Sept. 25, 2012).

B.  The Real Estate Settlement Procedures Act

RESPA creates a mechanism by which a borrower may request information relating to the servicing of a loan and imposes on loan servicers a duty to respond to borrowers' inquiries.[21] RESPA provides in pertinent part:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.[22]

RESPA defines a QWR as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.[23]

With this context in mind, the Motion to dismiss hinges on the resolution of the following three issues: (1) whether the Letter was a QWR; (2) if so, whether the Response was timely; and (3) assuming a violation of RESPA, whether the Debtor adequately pleaded damages in the Complaint.

    1.  Whether the Letter Was a QWR

First, I must determine whether the Letter constituted a QWR where the Debtor requested information relating to the servicing of her account, but did not explain why she believes her

---

[21] *See* 12 U.S.C. § 2605(e)(1)-(2).

[22] *Id.* § 2605(e)(1)(A).

[23] *Id.* § 2605(e)(1)(B).

account to be in error. Judge Feeney of this district recently addressed this issue in *In re Lacey*, holding that a borrower's letter to his loan servicer disputing the amount he and his spouse owed constituted a QWR.[24] In reaching her decision, Judge Feeney quoted the United States Court of Appeals for the Seventh Circuit in *Catalan v. GMAC Mortg. Corp.*, which explained that:

> RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. . . . *Any reasonably stated written request for account information can be a qualified written request*. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond.[25]

Here, the Debtor complied with the statutory requirements for a QWR under 12 U.S.C. § 2605(e)(1)(B)(i), where she sent written correspondence to the Defendant that included her name and account information. While the Debtor did not state why she believed her account was in error, she instead made a detailed request for information regarding, *inter alia*, her monthly interest rate, scheduled payments (both pre- and post-petition), how payments are applied to her account, account balances, and the incurrence of additional expenses, charges, and fees.[26] As the statute is written in the alternative, it was unnecessary for the Debtor to couple these requests with specific assertions of error. Thus, I find that the Letter contained a sufficiently detailed request for information satisfying 12 U.S.C. § 2605(e)(1)(B)(ii).

### 2. Whether the Response Was Timely

The next issue is whether the Defendant timely responded to the Letter. Under 12 U.S.C. § 2605(e)(2), a loan servicer has a duty to respond to a borrower, in any one of three prescribed

---

[24] *Lacey v. BAC Home Loans Servicing, LP (In re Lacey)*, 480 B.R. 13, 49 (Bankr. D. Mass. 2012).

[25] *Id.* (*quoting Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)).

[26] *See* Complaint, Exhibit A.

ways, "[n]ot later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request."[27] It is undisputed that the method and content of the Response satisfied the statutory requirements; at issue here is purely the timing of the Response.

The Debtor correctly argues that the Dodd-Frank Wall Street Reform Act of 2010 shortened the response period under RESPA from 60 days to 30 days.[28] However, this statutory amendment was not yet effective when the parties corresponded and when the Debtor filed the Complaint.[29] Thus, the Defendant had 60 days, not 30 days, from when it received the Letter to respond. In the Acknowledgment, the Defendant stated that it received the Letter on January 28, 2011. Counting 60 days from that date, excluding legal holidays and weekends, the deadline for the Defendant to respond to the Letter was April 25, 2011. The Response was dated April 27, 2011, which Defendant concedes was late. While there is some debate as to exactly how tardy the Response actually was, the precise number of days has no bearing on my decision at this stage. The fact that the Response was late gives rise to a cause of action under RESPA.

    3. Whether the Alleged Damages Are Adequately Pleaded

The final issue is whether the Debtor adequately pleaded damages in the Complaint. With respect to damages, RESPA provides in pertinent part:

---

[27] 12 U.S.C. § 2605(e)(2).

[28] *LeDoux v. JP Morgan Chase, N.A.*, 12-CV-260-JL, 2012 WL 5874314, at *9 n.11 (D.N.H. Nov. 20, 2012), *reconsideration denied*, 12-CV-260-JL, 2012 WL 6587344 (D.N.H. Dec. 17, 2012) (*citing* Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111–203, § 1463(c)) ("In July of 2010, Congress amended RESPA to shorten the time period under [12 U.S.C.] § 2605(e)(1)(A) from 20 days to five days, and to shorten the time period under [12 U.S.C.] § 2605(e)(2) from 60 days to 30 days.").

[29] *See id.* (*citing* Dodd-Frank Wall Street Reform Act § 1400(c); Designated Transfer Date, 75 Fed. Reg. 57,252 (Sept. 20, 2010)) (explaining that the amendment would not become effective until "18 months after the designated transfer date" of July 21, 2011).

> Whoever fails to comply with any provision of [RESPA] shall be liable to the borrower for each such failure in the following amounts:
> (1) Individuals
> In the case of any action by an individual, an amount equal to the sum of—
>> (A) any actual damages to the borrower as a result of the failure; and
>> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1000.[30]

The Defendant argues that the Debtor did not allege a causal link between the Defendant's failure to timely respond to the Debtor's QWR and the damages she suffered.[31] Even without fully explicating the proper standard for pleading damages for a RESPA violation, I agree that the Debtor's complaint is deficient on its face.[32]

Due to the Debtor's misapprehension of the applicable response deadline, she filed the Complaint before a RESPA violation actually occurred. While the Defendant's Response ultimately was late, any claim for actual damages could only have ripened on April 26, 2011, the day after the response deadline expired. As the present adversary proceeding was already pending, it is wholly implausible that any "anxiety, fatigue, loss of sleep, stress, mental anguish, and emotional distress"[33] was caused by the Defendant's subsequent breach of its duty under the

---

[30] 12 U.S.C. § 2605(f)(1).

[31] *See* Defendant's Memorandum at 8.

[32] *Cf. Mantz v. Wells Fargo Bank, N.A.*, Civil Action No. 09-12010-JLT, 2011 WL 196915, at *4 (D. Mass. Jan. 19, 2011) (holding that alleging a breach of RESPA duties alone does not state a claim under RESPA and that Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages); *with In re Lacey*, 480 B.R. at 50 (holding that damages from a failure to respond to the QWR can be inferred and a debtor need not expressly set forth such damages in a complaint).

[33] Complaint at ¶ 18.

statute.[34] For this reason, the Debtor has failed to state a claim and any attempt to amend the Complaint would be futile.

## V. CONCLUSION

For the foregoing reasons, I shall enter an order granting the Motion to Dismiss.

*/s/ William C. Hillman*

_____
William C. Hillman
United States Bankruptcy Judge

Dated: March 18, 2013

Counsel Appearing:

    George R. Schneider, Goodwin Procter LLP, Boston, MA,
        for Bank of America, N.A., successor by merger to BAC Home Loans Servicing,
        LP, the Defendant
    Mark W. Miller, The Law Office of Mark W. Miller, Boston, MA,
        for Rhona P. Julien, the Debtor

---

[34] Additionally, the Debtor's allegation that the Defendant engaged in a pattern or practice of noncompliance with 12 U.S.C. § 2605(e) is a bald assertion that I need not accept in the absence of supporting allegations.